IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAPST LICENSING GMBH & CO. KG,<br><br>   Plaintiff,<br><br>  v.<br><br>OLYMPUS CORPORATION; OLYMPUS<br>IMAGING AMERICA, INC.,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)   C.A. No. 07-415-***<br>)<br>)<br>)<br>)<br>) |

### OLYMPUS'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER THIS ACTION TO THE DISTRICT OF COLUMBIA

              Richard L. Horwitz (#2246)
              Kenneth L. Dorsney (#3726)
              POTTER ANDERSON & CORROON LLP
              Hercules Plaza, 6th Floor
              1313 N. Market Street
              Wilmington, DE 19899
              Tel: (302) 984-6000
              rhorwitz@potteranderson.com
              kdorsney@potteranderson.com

OF COUNSEL:

Richard de Bodo
David H. Ben-Meir
HOGAN & HARTSON LLP
1900 Avenue of the Stars
Suite 1400
Los Angeles, California 90067
Tel: (310) 785-4600

Dated: August 30, 2007
816129 / 32031

              *Attorneys for Defendants Olympus Corporation*
              *and Olympus Imaging America, Inc.*

**TABLE OF CONTENTS**

|     |     |     | Page |
| --- | --- | --- | --- |
| TABLE OF AUTHORITIES | | | ii |
| I. | PRELIMINARY STATEMENT | | 1 |
| II. | OLYMPUS'S MOTION TO TRANSFER SHOULD BE GRANTED | | 3 |
|     | A. | Almost All Courts Agree that A Prior Pending Suit Involving The Same Patents Creates A Compelling Basis For A § 1404(a) Transfer | 3 |
|     | B. | Papst Assumes, Incorrectly, That The *Fujifilm* And *Matsushita* Actions In The District of Columbia Will Be Dismissed. | 6 |
|     | C. | Delaware Is Less Convenient Than The District Of Columbia | 7 |
|     | D. | Olympus's State Of Incorporation Is Not Dispositive, And Is Relatively Unimportant. | 8 |
|     | E. | Papst Greatly Exaggerates Its Need For This Court's Subpoena Power. | 8 |
|     | F. | Papst's Assumption That The D.C. Court Remains Unfamiliar With Its Case, Which Is Nearly A Year Ahead Of This One, Is Baseless. | 9 |
|     | G. | This Action Could Clearly Have Been Brought in the District of Columbia. | 10 |
|     | H. | Papst's Actions Make Clear That Delaware Is Not Papst's First Choice Of Forum. | 10 |
|     | I. | Papst's Forum-Shopping Is Manifest By Its Curious Timing And Venue Choices. | 11 |
|     | J. | Like Papst's Pending Motion to Stay, Papst's Request For Discovery Is A Delay Tactic. | 12 |
| III. | CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

Page

Federal Cases

*ADE Corp. v. KLA-Tencor Corp.*,
   138 F. Supp.2d 565, 569-70 (D. Del. 2001) .................................................................. 3-4, 9

*Affymetrix, Inc. v. Synteni, Inc.*,
   28 F. Supp.2d 192 (D. Del. 1998) .......................................................................................... 8

*Alloc, Inc. v. Unilin Décor N.V.*,
   C.A. No. 03-253 GMS, 2006 U.S. Dist. LEXIS 78019 (D. Del. Oct. 26, 2006) ............... 3, 8

*America Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*
   C.A. No. 99-218-SLR, 1999 WL 615175 (D. Del. August 3, 1999) ................................... 13

*APV North America, Inc. v. Sig Simonazzi North America, Inc.*,
   295 F. Supp.2d 393 (D. Del. 2002) ...................................................................................... 13

*Aventis Pharma S.A. v. Sandoz Inc.*,
   No. 06-3671 MLC, 2007 U.S. Dist. LEXIS 26304 (D.N.J. April 10, 2007) ........................ 4

*Brunswick Corp. v. Precor, Inc.*,
   C.A. No. 00-691-GMS, 2000 WL 1876477 (D. Del. Dec. 12, 2000) .................................. 7

*Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*,
   C.A. No. 01-199-SLR, 2001 U.S. Dist. LEXIS 20803 (D. Del. Nov. 28, 2001) .................. 4

*E.I. Dupont de Nemours and Co. v. Diamond Shamrock Corp.*,
   522 F. Supp. 588, 591 (D. Del. 1981) ................................................................................... 4

*Electronics for Imaging, Inc. v. Coyle*,
   394 F.3d 1341 (Fed. Cir. 2005) ............................................................................................. 6

*Erbamont Inc. v. Cetus Corp.*,
   720 F. Supp. 387 (D. Del. 1989) ........................................................................................... 4

*Hupp v. Siroflex of Am.*,
   848 F. Supp. 744, 32 U.S.P.Q.2d 1842 (S.D. Tex. 1994) ............................................... 10, 11

*In re Plumbing Fixture Cases*,
   298 F. Supp. 484 (J.P.M.L. 1968) ....................................................................................... 12

*Integrated Health Services of Cliff Manor, Inc. v. THCI, Co. LLC*,
   327 B.R. 200 (D. Del. 2005) ................................................................................................ 13

*Jones Pharma, Inc. v. KV Pharmaceutical Co.*,
 C.A. No. 03-786-GMS, 2004 U.S. Dist. LEXIS 2333 (D. Del. Feb. 17, 2004) ...................... 4

*Kondrath v. Arum*,
 881 F. Supp. 925 (D. Del. 1995) ...................................................................................... 10

*MacDonald v. General Motors Corp.*,
 110 F.3d 337 (6th Cir.1997) ........................................................................................... 10

*Mentor Graphics Corp. v. Quickturn Design Systems, Inc.*,
 77 F. Supp.2d 505 (D.Del.1999) ....................................................................................... 8

*Nilssen v. Osram Sylvania, Inc.*,
 C.A. No. 00-695-JJF, 2001 WL 34368395, (D. Del. May 1, 2001) ............................... 5, 13

*North America Philips Corp. v. American Vending Sales, Inc.*,
 35 F.3d 1576 (Fed. Cir. 1994) ......................................................................................... 10

*Pursuit Athletic Footwear, Inc. v Save Power Ltd.*,
 C.A. No. 96-40 MMS, 1996 WL 328596, (D. Del. June 7, 1996) ..................................... 5

*Textron Innovations Inc. v. The Toro Co.*,
 C.A. No. 05-486-GMS, 2005 U.S. Dist. LEXIS 23561 (D. Del. Oct. 14, 2005) .................. 4

*V.E. Holding Corp. v. Johnson Gas Appliance Co.*,
 917 F. 2d 1574 (Fed. Cir. 1990) ...................................................................................... 10

<u>Statutes, Rules and Regulations</u>

28 U.S.C. § 1400(b) ................................................................................................................ 10

28 U.S.C. § 1404(a) ........................................................................................................ 1, 3, 12

35 U.S.C. § 293 ......................................................................................................................... 7

Fed. R. Civ. P. 32(a)(2) ......................................................................................................... 8-9

I.  **PRELIMINARY STATEMENT**

Papst's opposition confirms that this case should be transferred to the District of Columbia. Papst concedes that it is litigating the exact same two patents against Casio in the District of Columbia and that there will be a patent infringement trial concerning these patents in the District of Columbia in the future. Papst further admits that it is involved in at least two more lawsuits in the District of Columbia about these same two patents (involving Matsushita, JVC, and FujiFilm). These cases will involve many of the same witnesses, issues of fact and law, claims, invalidity and unenforceability defenses, non-infringement defenses, and damages issues as this case – which Papst does not, and cannot, deny. Courts generally agree that when a lawsuit (like this one) relates to the same patents as a case that is pending in another district (like the case between Casio and Papst), there is a compelling basis under 28 U.S.C. § 1404(a) to transfer the later case to the district where the earlier case is pending, including a desire to promote judicial efficiency and to avoid inconsistent judgments. Papst offers no meaningful response to the overwhelming authority supporting a transfer of this case.

Despite all these reasons supporting transfer to the District of Columbia, and despite the fact that neither party and no witnesses reside in this District, Papst continues to insist that this lawsuit should proceed here. Ultimately, Papst cannot explain why. Papst argues that two of the D.C. actions may ultimately be dismissed, but that argument is highly speculative, and beside the point. Even assuming that the *Casio* case may be the only case that goes to trial in the District of Columbia (Papst concedes that Casio will be tried in D.C.), that suit alone justifies a transfer, because such a transfer will still eliminate duplication, will reduce inconvenience and burden to the witnesses, and will avoid judge and jury from having to address and resolve the same issues.

Papst points out that Olympus is incorporated in Delaware, and claims this creates a Delaware interest in resolving this dispute. However, as courts widely acknowledge, that interest alone does not determine where a suit should be litigated. Neither party has any real presence in Delaware, and the acts underlying this dispute did not occur in Delaware any more than they occurred in other districts. The state of incorporation of a single party cannot outweigh the significant and undisputed factors favoring a transfer.

Papst argues that Olympus Imaging America, Inc. is within this Court's subpoena power, but may not be within that of the D.C. court. However, Papst fails to explain why it needs to rely on a witness from an Olympus subsidiary (as opposed to the Olympus parent) in this case. Papst will be free to subpoena Olympus Imaging and any of its employees for a deposition, and can present the transcript of such a deposition at trial if the witness is unavailable.

Papst argues, without basis, that the *Casio* court is unfamiliar with the patents-in-suit or with the issues common to this action. The *Casio* case has been pending for ten months. The *Casio* court has held a scheduling conference and handled a slurry of pre-trial motions and other proceedings that Papst simply ignores. Regardless of whether the *Casio* court has had occasion to construe the patents or examine the accused devices, that court has a significant head start over this one.

Without denying that this lawsuit could have been brought in the District of Columbia, Papst argues that Olympus did not "provide any evidence" that Olympus is subject to jurisdiction in D.C. To the extent Olympus's judicial admission that it sells accused products in that District was insufficient, Olympus submits with this reply brief documentary evidence of those sales, which are sufficient to confer jurisdiction.

Papst insists that Delaware is its first choice of forum, and not part of a larger scheme to forum shop. But Papst's commencement of MDL proceedings only days after this suit was filed belies that assertion. Undeniably, Papst never intended to engage in pre-trial proceedings here. Papst now argues artfully that Delaware is its first choice of forum for *trial*, but after pre-trial proceedings conclude, and with the specter of multiple trials scattered throughout the country, it is far from certain that Papst will still be content to try separate cases here in Delaware, California, Illinois, and the District of Columbia. Ultimately, the coincidental timing of Papst's filing of this and other lawsuits – all only a few weeks after an adverse discovery ruling in D.C. – demonstrates that this lawsuit is part of a broad subterfuge. Papst's true hope is to litigate this suit (and others) in Chicago, where its attorneys reside, and where it can start fresh with a new judge.

The legitimate bases for selecting the proper trial forum – the conveniences of the witnesses and the parties, as well as the interests of justice – weigh heavily in favor of a transfer of this suit to the District of Columbia. Accordingly, Olympus respectfully requests that this suit be transferred there.

## II. OLYMPUS'S MOTION TO TRANSFER SHOULD BE GRANTED

### A. ALMOST ALL COURTS AGREE THAT A PRIOR PENDING SUIT INVOLVING THE SAME PATENTS CREATES A COMPELLING BASIS FOR A § 1404(A) TRANSFER

The fact that Papst is already asserting the exact same patents in the District of Columbia and anticipates going to trial there strongly supports transferring this case to the District of Columbia under § 1404(a). Virtually all courts applying the factors provided under § 1404(a) have concluded that where there is a pending lawsuit involving the same patents pending in a different district, a second case involving those patents should be transferred to that district under § 1404(a), regardless of whether both parties are the same. *Alloc, Inc. v. Unilin Décor N.V.,*

3

C.A. No. 03-253 GMS, 2006 U.S. Dist. LEXIS 78019, at *9 (D. Del. Oct. 26, 2006) (granting a transfer because "there has already been litigation on both the '579 and '621 patents in the Eastern District of Wisconsin. Discovery has already begun in the Wisconsin Action, which was filed before Alloc initiated these lawsuits, and involves the same patents."); *Aventis Pharma S.A. v. Sandoz Inc.*, No. 06-3671 MLC, 2007 U.S. Dist. LEXIS 26304, at *9-*10 (D.N.J. April 10, 2007) (granting a transfer due, in part, to the efficiencies that would result from a prior pending infringement action in the transferee district involving the same patentee but different accused infringer).[1]

Courts find that such transfers are warranted due to the conveniences to witnesses who would otherwise have to provide identical testimony in two different trials. *See, e.g., Erbamont Inc. v. Cetus Corp.*, 720 F. Supp. 387, 395-96 (D. Del. 1989) (explaining that because two infringement suits have common validity and enforceability issues, the defendants in both suits "will likely seek to depose many of the same [employees of the plaintiff] and the inventors of the '124 patent who reside in [foreign jurisdictions]."); *E.I. Dupont de Nemours and Co. v. Diamond Shamrock Corp.*, 522 F. Supp. 588, 591 (D. Del. 1981) (granting a transfer because the transferee court "will hear testimony concerning the validity and infringement of the very patents here in suit.") As in the above-cited cases, because this suit and those in D.C. will require a determination of the validity and enforceability of the same patents, the trials in all four matters are likely to share several witnesses, including the inventor of the patents (a resident of

---

[1] Papst cites *Textron Innovations Inc. v. The Toro Co.*, C.A. No. 05-486-GMS, 2005 U.S. Dist. LEXIS 23561 (D. Del. Oct. 14, 2005); *Jones Pharma, Inc. v. KV Pharmaceutical Co.*, 2004 U.S. Dist. LEXIS 2333 (D. Del. Feb. 17, 2004); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*, C.A. No. 01-199-SLR, 2001 U.S. Dist. LEXIS 20803 (D. Del. Nov. 28, 2001); and *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp.2d 565, 569-70 (D. Del. 2001) in which motions to transfer were denied. D.I. 16 at 11. None of those cases, however, involved two pending suits involving the same patents.

4

Germany) and the attorneys who prosecuted those patents (none of whom reside in Delaware). D.I. 12 at 14-15. With a transfer, the trial examinations and travel required of those witnesses will be minimized, lessening the burdens on those witnesses as well as on counsel for the parties, and the courts. D.I. 12 at 15. Without a transfer, these witnesses will likely be forced to travel back and forth for cases in different districts to provide duplicative testimony.

In addition to unnecessary witness inconvenience, courts recognize that separate trials in different district involving the same patents will present a significant risk of judicial inefficiency and inconsistent rulings, which weighs strongly in favor of a transfer. See, e.g., *Erbamont Inc.*, 720 F. Supp. 387, 395-96 ("resolution of the [two] disputes in the same judicial forum would serve judicial economy and lessen the possibility of inconsistent judgments regarding the '124 patent . . . Central to both [suits] is the validity and enforceability of [that patent."); *Nilssen v. Osram Sylvania, Inc.*, C.A. No. 00-695-JJF, 2001 WL 34368395, at *4, fn. 10 (D. Del. May 1, 2001) (granting a transfer of a patent infringement dispute, in part, because of the risk of inconsistent rulings); *Pursuit Athletic Footwear, Inc. v Save Power Ltd.*, C.A. No. 96-40 MMS, 1996 WL 328596, at *9 (D. Del. June 7, 1996) ("Another consideration motivating this conclusion is the specter of inconsistent judgments. There is a very real possibility that the claims raised in the Fort Worth Action could yield a certain result, while those very same claims could yield a different result in this Court. The possibility of inconsistent verdicts further weighs in favor of transfer."). The risk of judicial inefficiency and inconsistent judgments undeniably exists here. If this action proceeds in Delaware, this Court will be forced to enter judgments on the validity and enforceability of the same patents here as those at issue in D.C., in addition to any common infringement and damages issues. Furthermore, without a transfer, separate actions will present a risk that judgments entered by this court will conflict with those entered by the

5

D.C. court. If a transfer is granted, the judicial time and resources necessary to resolve those issues will be halved, and the risk of inconsistent judgments from this Court and the D.C. court will be eliminated.

### B.  PAPST ASSUMES, INCORRECTLY, THAT THE *FUJIFILM* AND *MATSUSHITA* ACTIONS IN THE DISTRICT OF COLUMBIA WILL BE DISMISSED.

Papst attempts to undermine the significance of the suits pending in the District of Columbia by speculating that all but one of those suits will probably be dismissed. D.I. 16 at 7. With respect to the *Fujifilm* action, Papst admits that it is subject to the D.C. Court's jurisdiction, but argues that it sued Fujifilm first in Illinois. D.I. 16 at 9. The first-to-file doctrine, however, is not a bright line rule. As Papst admits, considerations of justice and efficiency can trump that doctrine. *Id.* (citing *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005)). For at least the reasons set forth in Olympus's briefing on this motion, those considerations weigh heavily in favor of permitting the *Fujifilm* action to proceed in the District of Columbia. Furthermore, Fujifilm has moved to dismiss Papst's suit against it for Papst's failure to state a claim. Declaration of Jordan B. Kushner ("Kushner Decl.) Ex. D, filed contemporaneously herewith. If that motion is granted, the first-to-file doctrine will no longer be available to Papst. Therefore, it is unlikely (and at least far from certain) that Papst's suit in Illinois, with Fujifilm's tenuous connection to that state,[2] will proceed there.

With respect to the *Matsushita* action, Papst argues that it is not subject to jurisdiction in the District of Columbia because it had registered an Illinois agent for service of process prior to the filing of that suit. D.I. 16 at 8. That fact alone does not mean that there is no jurisdiction over Papst in the District of Columbia. Papst's registering of an agent for service of process

---

[2]  Although Fujifilm has a regional office in Hanover Park, Illinois, its headquarters are located in Valhalla, New York.

6

arguably means, at most, that jurisdiction can no longer be based *solely* upon 35 U.S.C. § 293. Matsushita's complaint against Papst, however, alleges additional facts establishing jurisdiction over Papst. *See, e.g.*, Kushner Ex. E, at ¶ 22. Furthermore, whether Papst does, in fact, have such an agent in Illinois is far from certain. Kushner Ex. F. Finally, even assuming that Papst successfully challenges the *Fujifilm* and/or *Matsushita* actions in D.C., the existence and progress of the *Casio* suit is sufficient alone to justify a transfer, as is discussed above. *See, e.g., Brunswick Corp. v. Precor, Inc.*, C.A. No. 00-691-GMS, 2000 WL 1876477 (D. Del. Dec. 12, 2000) (granting a transfer to a district in which a single related action was pending).

Papst also suggests that because it has now registered an agent for service of process in Illinois, any future declaratory judgment actions against it will need to be filed there. That suggestion is irrelevant to this motion. Neither party has asked the Court to transfer this suit to Illinois. Thus, the only relevant inquiry is whether this suit should be tried here, or in the District of Columbia, where litigation involving Papst's patents and similar accused devices has been underway for nearly a year.

### C. DELAWARE IS LESS CONVENIENT THAN THE DISTRICT OF COLUMBIA.

Papst points out that none of the witnesses, documents, or principal counsel are located in the District of Columbia. D.I. 16 at 10. The same can be said of Delaware. D.I. 13, ¶ 4. However, travel to Delaware for trial and motion practice will require the parties and their representatives to travel through D.C., Chicago, or New York, and then through Philadelphia, while travel to D.C. can be done directly.

A transfer to the District of Columbia is warranted for the additional reason that this case has been assigned to the vacant judgeship, which could delay the scheduling of a trial once pre-trial proceedings are completed.

7

### D. OLYMPUS'S STATE OF INCORPORATION IS NOT DISPOSITIVE, AND IS RELATIVELY UNIMPORTANT.

Papst points out that because Olympus Imaging is incorporated in Delaware, that this State has an interest in this action. D.I. 16 at 11. That interest, however, is only one of many considerations taken into account in determining where a lawsuit should proceed and is not dispositive. *See, e.g., Alloc, Inc.,* C.A. No. 03-253-GMS, 2006 U.S. Dist. LEXIS 78019, at *9 (granting a transfer because "although Alloc is incorporated in Delaware and Quick-Step was incorporated in Delaware, and should reasonably expect to litigate in this forum, there is little connection between Delaware and this action or the parties"); *Affymetrix, Inc. v. Synteni, Inc.,* 28 F. Supp.2d 192 (D. Del. 1998) (granting transfer despite defendant's incorporation in Delaware); *Mentor Graphics Corp. v. Quickturn Design Systems, Inc.,* 77 F. Supp.2d 505 (D.Del.1999) (same). Here, Delaware's interest in this action, which arises solely from one party's incorporation (and not because either party conducts significant business here), does not outweigh the substantial conveniences and efficiencies that would result if this suit were transferred.

### E. PAPST GREATLY EXAGGERATES ITS NEED FOR THIS COURT'S SUBPOENA POWER.

Papst also argues, incorrectly, that this suit should be tried in Delaware because Olympus Imaging is located within the subpoena power of this Court, but not within that of the District of Columbia. D.I. 16 at 11. Papst's claims and defenses, however, are likely to depend primarily upon its own witnesses, and not those of Olympus. Furthermore, Papst is free to take the deposition of any relevant U.S. Olympus employee, regardless of where he or she resides, and Olympus will present its own employee-witnesses at trial voluntarily. In the unlikely event that Papst will need to present at trial an Olympus employee whom Olympus does not intend to call voluntarily, Papst will be free to present the deposition testimony of that witness. Fed. R. Civ. P.

8

32(a)(2). The extremely remote possibility that Papst will seek to present live testimony from an Olympus employee whom Olympus does not intend to call voluntarily does not justify the inefficiencies of a separate trial in this District. *See, e.g., ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp.2d 565, 569-70 (D. Del. 2001) (rejecting an argument identical to that of Papst because "it would be an unusual patent infringement case where issues of liability, validity and damages turned on the testimony of a competitor . . . . Counsel suggested this testimony would be relevant to obviousness and commercial success, but when the court pressed counsel, he conceded he has never called a competitor to testify at a patent infringement trial."). Furthermore, if Papst was truly concerned about the availability of Olympus's employees at trial, it could simply have asked Olympus to make them available in D.C., which it has not done.

### F. PAPST'S ASSUMPTION THAT THE D.C. COURT REMAINS UNFAMILIAR WITH ITS CASE, WHICH IS NEARLY A YEAR AHEAD OF THIS ONE, IS BASELESS.

Papst insists that the D.C. Court has not had the opportunity to familiarize itself with the subject matter of the *Casio* suit. Obviously, Papst cannot know precisely what the D.C. Court has and has not done in its oversight of the *Casio* suit, but Papst's baseless suggestions do nothing to undermine the fact that the D.C. Court is ten months ahead of this one. In those ten months, that court has held a scheduling conference and presided over heavy motion practice. Kushner Ex. G. That court's familiarity with the parties and the procedural issues that it has addressed will facilitate its handling of this lawsuit, even if the D.C. court has not yet had occasion to construe the asserted patent claims or examine the accused products. The D.C. court will have to perform these tasks eventually, and clearly it would conserve time and resources if this Court did not have to perform them as well.

### G. THIS ACTION COULD CLEARLY HAVE BEEN BROUGHT IN THE DISTRICT OF COLUMBIA.

As Olympus explained in its opening brief, and as Papst does not deny, a patent suit may be brought in any district in which the court can exercise personal jurisdiction over the defendant. D.I. 12 at 8-9 (citing *Kondrath v. Arum*, 881 F. Supp. 925 (D. Del. 1995); *V.E. Holding Corp. v. Johnson Gas Appliance Co.*, 917 F. 2d 1574, 1584 (Fed. Cir. 1990); and 28 U.S.C. §1400(b)). Olympus then admitted that it is subject to personal jurisdiction in the District of Columbia because its digital cameras and other products are sold there. D.I. 12 at 8. In response, Papst does not deny that Olympus is subject to personal jurisdiction in the District of Columbia. Rather, it argues that "there is no evidence that" jurisdiction exists, presumably because Olympus did not provide documentary proof of its sales. D.I. 16 at 5. However, Olympus's statement in its brief constitutes an admission that Olympus has sufficient contacts with the District of Columbia to justify the exercise of jurisdiction there. *See, e.g., North America Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 15779 (Fed. Cir. 1994); *Hupp v. Siroflex of Am.*, 848 F. Supp. 744, 746, 32 U.S.P.Q.2d 1842, 1844 (S.D. Tex. 1994); *MacDonald v. General Motors Corp.*, 110 F.3d 337, 340 (6th Cir.1997) (explaining that an attorney's statement qualifies as a judicial admission if it was deliberate, clear and unambiguous). To the extent Olympus must provide documentary evidence supporting its admissions, it submits such evidence with this brief. Kushner Decl. Ex. H; Declaration of James DiCarlo, filed concurrently herewith, at ¶ 3.

### H. PAPST'S ACTIONS MAKE CLEAR THAT DELAWARE IS NOT PAPST'S FIRST CHOICE OF FORUM.

Papst argues that its choice of this forum deserves deference because it is Papst's "first and only choice of forum for *trial*." D.I. 16 at 10 (emphasis added). The fact remains that, with respect to the more expensive and time consuming pre-trial phase of this litigation, Papst never

10

intended to litigate in Delaware, as is evidenced by the consolidation motion that it filed immediately after filing this lawsuit. Thus, for purposes of pre-trial, Delaware is not Papst's first choice of forum.

Although Papst insists that Delaware is its first choice *trial* forum, only time will tell whether it ultimately chooses to proceed with trial here. After consolidated pre-trial proceedings end at least a year from now, it is far from certain that Papst will be content to conduct four (or more) separate trials at opposite ends of the country. There is a likelihood that Papst will attempt to have all of the related actions consolidated for trial, and not in Delaware, which is not a candidate for pre-trial consolidation, and where no party has any physical presence.

## I.  PAPST'S FORUM-SHOPPING IS MANIFEST BY ITS CURIOUS TIMING AND VENUE CHOICES.

Papst denies that it strategically selected the venues for its lawsuits in order to escape the District of Columbia. D.I. 16 at 5. It does so by pointing out that it sued the defendants where they were arguably subject to jurisdiction based on either: i) their peripheral places of business where few, if any, witnesses are likely to be, or ii) in the case of Olympus, its state of incorporation where it has no offices at all. *Id.* However, as Papst is fully aware, each of the defendants sells digital cameras nationwide, and could have been sued in any state. *See, e.g., North America Philips Corp.*, 35 F.3d at 15779 (explaining that for jurisdictional purposes, the act of infringement occurs in the district where the allegedly infringing product is sold); *Hupp*, 848 F. Supp. at 746 (explaining that the sales of only a few accused products in a particular state is sufficient to confer personal jurisdiction over a defendant). Nevertheless, Papst does not explain why it failed to take the seemingly obvious course of suing each of the defendants where their headquarters are located: New York, New Jersey, and Pennsylvania. Kushner Decl. Ex A. Clearly, it was because all three locations are on the East Coast and an average of about 780

11

miles from Chicago, and only 220 from D.C. Kushner Decl. Ex. B. Had it filed suit in these Districts, Papst's scheme to consolidate away from D.C. would have been far weaker.

Papst also attempts to explain the timing of its recently-filed suits by pointing out that it had been in negotiations with Olympus, Fujifilm and Samsung for "quite a few months." D.I. 16 at 6. But Papst does not explain why it waited to file those suits, coincidentally, until two weeks after the adverse discovery ruling in the District of Columbia. D.I. 12 at 3-4. Indeed, Papst filed suit against Olympus the day after the parties had agreed to continue in-person settlement discussions. Kushner Decl. Ex. C. Clearly, Papst filed its lawsuits *despite* its ongoing negotiations with the defendants, not because those negotiations had failed.

Finally, Papst points out that Olympus, Fujifilm and Matsushita are all represented by Hogan & Hartson LLP, and suggests that this evidences forum-shopping on the part of the defendants. D.I. 16 at 6. To the extent Papst is suggesting that Olympus seeks a transfer to D.C. because its counsel resides there, Papst is incorrect. The Hogan & Hartson attorneys who represent Olympus and Matsushita are located in Los Angeles, California, not Washington D.C. Those defendants are simply trying to get their cases before a judge who has been adjudicating the Papst patents for 10 months, which is exactly what § 1404(a) requires.

### J.     LIKE PAPST'S PENDING MOTION TO STAY, PAPST'S REQUEST FOR DISCOVERY IS A DELAY TACTIC.

Papst requests that, before the Court rules on Olympus's motion to transfer, the Court permit discovery into who the witnesses are and where they are located. D.I. 16 at 13. Papst's request is nothing more than another delay tactic. As Papst is fully aware, once the MDL panel issues a § 1407 transfer, the court in which the matter was originally filed is divested of jurisdiction, and may not decide motions pending before it and undecided at the time the transfer is made. *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 495-96 (J.P.M.L. 1968). Thus, should

the Court permit discovery before it rules on Olympus's motion to transfer, it will necessarily be divested of jurisdiction to rule on that motion once the MDL panel transfers this case for pre-trial proceedings. Discovery is unnecessary. The parties know generally who the witnesses will be (*i.e.*, the inventor, prosecuting attorneys, technical experts, and party employees). Motions to transfer are routinely granted before discovery commences. *See, e.g., Integrated Health Services of Cliff Manor, Inc. v. THCI, Co. LLC*, 327 B.R. 200 (D. Del. 2005) (granting a motion to transfer venue prior to the taking of discovery); *APV North America, Inc. v. Sig Simonazzi North America, Inc.*, 295 F. Supp.2d 393 (D. Del. 2002) (same); *Nilssen v. Osram Sylvania, Inc.*, C.A. No. 00-695-JJF, 2001 WL 34368395 (D. Del. May 1, 2001) (same); *America Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, C.A. No. 99-218-SLR, 1999 WL 615175 (D. Del. August 3, 1999) (same). This case is not unique.

### III.  CONCLUSION

For all of the above reasons, Olympus respectfully requests that the Court grant its Motion to Transfer now, before discovery commences, and transfer this action to the District of Columbia.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Richard de Bodo
David H. Ben-Meir
HOGAN & HARTSON LLP
1900 Avenue of the Stars
Suite 1400
Los Angeles, California 90067
Tel: (310) 785-4600

Dated: August 30, 2007
816129 / 32031

By: */s/ Richard L. Horwitz*
Richard L. Horwitz (#2246)
Kenneth L. Dorsney (#3726)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

*Attorneys for Defendants Olympus Corporation and Olympus Imaging America, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### **CERTIFICATE OF SERVICE**

I, Richard L. Horwitz, hereby certify that on August 30, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on August 30, 2007, I have Electronically Mailed the document to the following person(s):

| | |
|---|---|
| Steven J. Balick<br>John G. Day<br>Lauren E. Maguire<br>Ashby & Geddes<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>sbalick@ashby-geddes.com<br>jday@ashby-geddes.com<br>lmaguire@ashby-geddes.com | Jerold B. Schnayer<br>John L. Ambrogi<br>Welsh & Katz, Ltd.<br>120 South Riverside Plaza, 22nd Floor<br>Chicago, Illinois 60606<br>jbschnayer@welshkatz.com<br>jambrogi@welshkatz.com |

/s/ *Richard L. Horwitz*
Richard L. Horwitz
Kenneth L. Dorsney
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

810412 / 32031